UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK P. RONNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 CV 8194 |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff is seeking a reversal or remand of the Administrative Law Judge's decision denying his claim for Supplemental Security Income under Title XVI of the Social Security Act and disability insurance benefits under Title II of the SSA. For the reasons outlined, plaintiff's motion for summary judgment is denied [dkt. 22] and the defendant's motion for summary judgment is granted [dkt. 27].

## STATEMENT

Plaintiff Patrick P. Ronning brings this action against the Acting Commissioner of Social Security, defendant, Carolyn W. Colvin ("Commissioner"). Plaintiff is seeking a reversal or remand of the Administrative Law Judge's ("ALJ") decision denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA") and disability insurance benefits under Title II of the SSA. For the reasons set forth below, we deny plaintiff's motion for summary judgment [dkt. 22] and affirm the ALJ's decision. Defendant's motion for summary judgment is granted [dkt. 27].

## I. Procedural Background

On June 2010, plaintiff filed a Title II application for disability benefits and a Title XVI application for SSI, alleging disability beginning January 2005.[1] Both claims were initially denied.[2] Upon reconsideration, plaintiff appeared at a hearing before an ALJ on June 5, 2012.[3]

After the hearing, on August 3, 2012, the ALJ concluded that plaintiff was not disabled within the meaning of the SSA.[4] The ALJ concluded that plaintiff's impairments, individually or as a whole, were not severe; thus plaintiff had the residual functional capacity ("RFC")[5] to perform light work.[6] The Social Security Administration's Appeals Council denied further review, leaving this decision as the final decision of the Commissioner.[7]

## II. Factual Background

Plaintiff was twenty-seven years old when he injured himself working as a garbage truck driver in January 2005.[8] He received a settlement for his injuries but was let go from his job in November of the same year because he could not perform the physical functions required by the employer.[9] Plaintiff briefly worked at a fast food restaurant for a month, but has been without a job since.[10]

### A. Medical History

Because of his injury, plaintiff received treatments from a neurosurgeon in 2005 who concluded that he had bilateral lumbosacral muscle spasm and should be limited to "light duty"

---

[1] R. at 10.
[2] *Id.*
[3] *Id.*
[4] R. at 24.
[5] RFC is defined as "what an individual can still do despite his or her limitations." SSR 96-8P, 1996 WL 374184, at *2.
[6] R. at 12-16.
[7] 20 C.F.R. § 404.981; *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).
[8] R. at 33.
[9] R. at 34, 37.
[10] R. at 206.

work.[11] As a second opinion, another neurosurgeon concurred with this conclusion, stating that the MRI showed an unremarkable result, and although there was slight foraminal stenosis, it did not appear compressive.[12] Subsequently, plaintiff received treatments from physical therapists and chiropractors throughout 2005 and 2006 for his back pain.[13] He also received treatments from a general surgeon.[14] Additionally, in October 2009, plaintiff received treatments for substance abuse and grief counseling.[15] These treatments were received per the recommendation of his attorney after he received a DUI in April 2009.[16]

After applying for disability in June 2010, a state agency physician examined plaintiff in September 2010 and concluded that his physical symptoms were credible, but the severities of the symptoms were not.[17] Another state agency physician examined plaintiff in June 2011 and concluded that his back condition had improved.[18] The second physician also concluded that plaintiff's allegation of back pain was partially credible.[19] In his opinion, the extent of plaintiff's alleged limitations exceeded the objective medical evidence, so the second physician concurred with the first physician's light RFC conclusion.[20] Since June 2010, plaintiff has received treatments from a chiropractor and a psychiatrist from the Kendall County Health Department through 2012.[21]

---

[11] R. at 473.
[12] R. at 476.
[13] R. at 457, 483.
[14] R. at 518.
[15] R. at 333, 345-47.
[16] R. at 345.
[17] R. at 329.
[18] R. at 373.
[19] *Id.*
[20] *Id.*
[21] R. at 524, 527, 538, 531.

### B. The Hearing Before the ALJ

At the hearing before the ALJ on June 5, 2012, plaintiff testified about his physical and mental impairments.[22] Plaintiff claimed that he cannot concentrate for more than forty-five minutes, cannot control his temper or mood, and has a constant and intense pain in the lower back and hips.[23]

In addition to plaintiff's testimony, two medical experts and a vocational expert ("VE") testified before the ALJ regarding plaintiff's medical conditions and job prospects.[24] The first medical expert, a licensed psychologist, testified that there was limited evidence to establish plaintiff's mental impairment.[25] The second medical expert, a doctor of internal medicine, testified that he agreed with the medical conclusions of the state agency physicians who determined a light RFC for plaintiff.[26] The VE testified that based on the reports of the light RFC conclusion and additional restrictions such as "lifting up to 20 pounds occasionally, 10 pounds frequently with the ability to be on the feet or seated six out of eight hours," and not climbing ladders, ropes or scaffolds, there were many jobs available for plaintiff.[27] Specifically, the VE testified that there would be 6,800 jobs as a cafeteria attendant, 10,000 jobs as a housekeeping cleaner, and 7,800 jobs as a marker—all in the light unskilled jobs category—available for plaintiff despite his limitations.[28] Plaintiff's counsel challenged these numbers at the hearing and his objections were noted in the record.[29]

---

[22] R. at 38-47.
[23] *Id.*
[24] R. at 30.
[25] R. at 48.
[26] R. at 56-57.
[27] R. at 62.
[28] R. at 62-63.
[29] R. at 67.

### C. The ALJ's Decision

In an opinion issued on August 3, 2012, the ALJ concluded that plaintiff was not disabled within the meaning of the SSA from the date of his injury through the date of the decision.[30] The SSA sets forth a five-step test for determining whether a plaintiff is "disabled" under the SSA.[31]

At the second step, the ALJ is to consider whether the plaintiff has a severe impairment or combination of impairments.[32] If the plaintiff does not, he is not disabled under the SSA.[33] Here, the ALJ concluded that plaintiff had severe impairments of "fibromyalgia, a vertebrogenic disorder, and a history of opiate dependence" which, in combination, cause more than minimal functional limitations.[34]

The third step is for the ALJ to consider whether the plaintiff's impairments meet or equal any impairment listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1.[35] Relying on the Disability Determination Services ("DDS") reports, the ALJ concluded that plaintiff did not satisfy the criteria of this step.[36] If plaintiff fails step three, in step four, the ALJ must assess the plaintiff's RFC and past relevant work.[37] After reviewing plaintiff's testimony, DDS reports, and various medical records, the ALJ concluded that plaintiff had a RFC to perform "light work" and cannot "climb ladders, ropes, or scaffolds."[38] The ALJ also concluded that based on this RFC determination, plaintiff cannot perform his prior work as a garbage truck driver.[39]

---

[30] R. at 10.
[31] 20 C.F.R. §§ 404.1520(a), 416.920(a).
[32] 20 C.F.R. § 404.1520(a)(4)(ii).
[33] R. at 12.
[34] *Id.*
[35] 20 C.F.R. § 404.1520(a)(4)(iii).
[36] R. at 15.
[37] 20 C.F.R. § 404.1520(a)(4)(iv).
[38] R. at 16-22.
[39] R. at 22.

In the fifth and final step of the analysis, the ALJ must determine whether the plaintiff can do any other work considering his RFC, age, education, and work experience.[40] If the plaintiff is able to do other work that exists in significant numbers, he is not disabled under the SSA.[41] Here, based on the VE's testimony, the ALJ concluded that there were significant jobs in the "light work" category that plaintiff could perform and, thus, plaintiff was not disabled.[42]

### III. Standard of Review

We must sustain the Commissioner's findings of fact if they are supported by substantial evidence and are free of legal error.[43] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44] While the standard of review is deferential, the reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision.[45] If there is conflicting evidence where reasonable minds would differ, the Commissioner, not the court, has the responsibility for determining whether a plaintiff is disabled.[46] The ALJ does not have to address every piece of evidence or testimony that is presented, but he must build a logical bridge between the evidence and his conclusion.[47] We will conduct a critical review of the evidence and will remand or reverse the ALJ's decision if it lacks evidentiary support or if the Commissioner applied an erroneous legal standard.[48]

---

[40] 20 C.F.R. § 404.1520(a)(4)(v).
[41] 20 C.F.R. § 404.1560(c)(2).
[42] R. at 23.
[43] 42 U.S.C. § 405(g).
[44] *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007)).
[45] *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).
[46] *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).
[47] *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).
[48] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

### IV. Analysis

Plaintiff argues the ALJ erred at each step of the five-step test: (1) the ALJ made an erroneous step two analysis with respect to plaintiff's mental limitations, (2) the ALJ wrongly concluded in step three that plaintiff does not meet the requirements of a listed impairment, (3) the ALJ made an erroneous RFC determination in step four, (4) the ALJ improperly rejected the credibility of plaintiff's testimony, and (5) the ALJ asked a defective hypothetical question to the VE who had no basis to substantiate her testimony in step five. We, however, find no error on the part of the ALJ with respect to each of these arguments. We review plaintiff's arguments in order.

#### A. ALJ's Step Two Analysis Was Proper

As we noted, the ALJ concluded that plaintiff had severe impairments of "fibromyalgia, a vertebrogenic disorder, and a history of opiate dependence" which, in combination, cause "more than minimal functional limitations in plaintiff's ability to perform work activity."[49] Plaintiff argues that this conclusion was erroneous because: (1) the ALJ failed to use 20 C.F.R. § 404.1520a, (2) the ALJ's conclusion was solely based on the testimony of the licensed psychologist and not the overall record, and (3) the ALJ did not consider the aggregate effect of plaintiff's impairments.

First, plaintiff argues that the ALJ failed to use 20 C.F.R. § 404.1520a, which is a special technique for assessing mental illnesses. This technique is a two-part test in which the ALJ first determines whether the plaintiff has a medically determinable mental impairment.[50] Once the plaintiff is found to have a medically determinable mental impairment, the ALJ then conducts the second part of the test by "document[ing] that finding and rat[ing] the degree of functional

---

[49] R. at 12.
[50] 20 C.F.R. § 404.1520a(b)(1); *see also Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."[51] These four functional areas are also known as the "B criteria."[52] Specifically, plaintiff argues that the ALJ failed to use this special technique by focusing only on the "B criteria" without first establishing the existence of a medically determinable mental impairment.

This is simply not the case because the ALJ found a severe mental impairment in plaintiff's history of opiate dependence.[53] But even if the ALJ did not find a medically determinable mental impairment before analyzing the "B criteria," the ALJ still concluded that plaintiff's mental impairments were not severe based on his review the "B criteria."[54] Thus, regardless of the first step, the ALJ would have reached the same conclusion that the plaintiff's mental impairments were not severe, making the omission of the first step a harmless error.[55] As the Seventh Circuit has held, if we are convinced that the ALJ will reach the same result, "the ALJ's failure to explicitly apply the special technique [i]s harmless."[56]

Second, plaintiff contends that the ALJ did not refer to the record to substantiate his conclusions in the four functional areas for evaluating mental disorders and only relied on the testimony of the licensed psychologist. As the Commissioner correctly points out, this argument is misplaced because the ALJ specifically cited and analyzed the function reports from the DDS and plaintiff's testimony.[57] Specifically, plaintiff asserts that this error occurred in the functional

---

[51] *Craft,* 539 F.3d at 674.
[52] *Id.*
[53] R. at 12.
[54] R. at 15.
[55] *See Flynn v. Astrue*, 563 F. Supp. 2d 932, 941 (N.D. Ill. 2008) ("[s]ince the ALJ found [plaintiff's] impairment failed to meet section B, his failure to discuss section A was meaningless. To meet the listing, [plaintiff] had to meet both sections. Once the ALJ found she did not meet section B, it would have been idle to discuss section A, and the law never demands an empty formality").
[56] *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).
[57] R. at 14-15.

areas of "social functioning" and "concentration, persistence, or pace," but we do not agree. We find that the ALJ used evidence outside of the psychologist's testimony and built a "logical bridge" between the evidence and his conclusions in each of the four functional areas.[58] In the area of "social functioning," for example, the ALJ concluded that plaintiff had mild limitations because he was able to attend his daughter's school events, go shopping, and attend group therapy sessions.[59] In the area of "concentration, persistence or pace," the ALJ concluded that plaintiff had a mild limitation because he was able to perform some daily functions such as drawing for pleasure, walking his dogs, and completing models all the way through.[60]

Third, plaintiff argues that the ALJ did not conduct a comprehensive assessment of all of his impairments because he only considered plaintiff's physical limitations. Similar to his second argument, the Commissioner rightfully points out that this argument is misplaced because, in addition to plaintiff's physical limitations, the ALJ conducted a comprehensive review of the plaintiff's mental impairments such as the licensed psychologist's testimony, a mental health report by Kendall County Health Department, function reports, and plaintiff's testimony.[61] Thus, consistent with 20 C.F.R. § 404.1523,[62] we conclude that the ALJ adequately considered the aggregate effect of plaintiff's physical and mental impairments in making the severity determination.[63]

---

[58] *Giles ex rel. Giles*, 483 F.3d at 486 ("An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion").
[59] R. at 15.
[60] *Id.*; *cf. Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) ("ALJ's conclusion that there was no medical evidence of a right-hand problem is not supported by the record").
[61] R. at 12-15.
[62] 20 C.F.R. § 404.1523 (stating that the SSA will consider the combined effect of all of [the claimant's] impairments").
[63] R at 12.

## B. ALJ Properly And Reasonably Relied On The DDS Report in Step Three

In step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1.[64] Plaintiff argues this conclusion is erroneous because the ALJ used a boilerplate reference to the DDS report without any analysis and "played doctor" by making his own medical assumptions.

First, we address plaintiff's claim that the ALJ used the DDS report to substantiate his step three conclusion without any analysis. It is true that the ALJ solely relied on the DDS report without additional explanation, but such practice is permitted in the Seventh Circuit as long as "there is no contradictory evidence in the record."[65] Plaintiff has the burden of showing this contradictory evidence, but he has failed to point us to any, nor do we find any in the record.[66] Accordingly, we conclude that the ALJ's reliance on the DDS report was reasonable.[67]

Second, plaintiff argues that the ALJ "played doctor" by making his own medical assumptions and not logically connecting the evidence with his conclusions.[68] We do not find any merit in this argument because, as discussed above, the ALJ permissibly and reasonably relied on the DDS reports, which concluded that plaintiff has mild or no mental limitations in the functional areas and a light physical limitation.[69] Again, plaintiff has the burden to prove

---

[64] R. at 15.
[65] *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) ("the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record"); *see also Scheck v. Barnhart,* 357 F.3d 697, 700-01 (7th Cir.2004).
[66] *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (holding that plaintiff has the "burden of establishing that he met all of the requirements of a listed impairment").
[67] Regarding this argument, plaintiff further contends that the ALJ erred by citing 20 C.F.R. § 404.1527(f) which has been eliminated. This is a harmless citation error because § 404.1527(f) was not eliminated but was redesignated as § 404.1527(e) per 77 FR 10651-01.
[68] Plaintiff cites *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) as authority.
[69] R. at 318-19, 373.

otherwise.[70] He does not show us where this erroneous medical assumption was made or which evidence contradicts this conclusion. Therefore, we affirm the ALJ's conclusion in the step three determination.

### C. ALJ Conducted Sufficient Analysis In the Step Four RFC Determination

After concluding that plaintiff's impairment did not rise to the level of a listed impairment in step three, the ALJ concluded that plaintiff had a RFC to perform light work.[71] Light work is defined in 20 C.F.R. § 404.1567 as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[72] Plaintiff contends that the ALJ's RFC determination was erroneous because: (1) the ALJ failed to perform a function-by-function analysis, (2) the ALJ did not consider plaintiff's limitation in combination, and (3) the ALJ did not give controlling weight to plaintiff's treating physicians.

First, although we agree that a function-by-function analysis in accordance with Social Security Ruling ("SSR") 96-8p[73] was not performed, we disagree that this omission warrants remand. Contrary to plaintiff's assertion, SSR 96-8p does not mandate a function-by-function analysis. Rather, the function-by-function analysis is an option for consideration.[74] What is mandated to the ALJ by SSR 96-8p is a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

---

[70] *Filus*, 694 F.3d at 868; *see also Briscoe ex rel. Taylor*, 425 F.3d at 352 (holding that "[t]he claimant bears the burden of proof at steps one through four" of the five-step test).
[71] R. at 16 ("claimant has the residual functional capacity to perform light work … except that he can never climb ladders, ropes, or scaffolds and never balance. He can occasionally climb a low level 4-5 step ladder").
[72] *See generally* 20 C.F.R. § 404.1567 (defining "light work" in further detail).
[73] SSR 96-8P, 1996 WL 374184, at *4.
[74] *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007) ("[t]he plain language of SSR 96–8p requires the adjudicator to consider, not articulate, [plaintiff's] RFC in a function-by-function basis") (internal quotations omitted).

evidence."[75] The Seventh Circuit has affirmed this interpretation of SSR 96-8p and held that a narrative discussion of plaintiff's symptoms and medical records is a sufficient substitute for the function-by-function analysis.[76]

In this case, the ALJ satisfied this narrative discussion requirement by analyzing plaintiff's testimony (and the credibility of his testimony), disability appeals report, and other objective medical evidence from various physicians and chiropractors.[77] Plaintiff merely alleges that the ALJ did not produce a narrative discussion, but fails to point to a specific finding (or lack thereof) in the ALJ's opinion, or evidence to the contrary. Accordingly, we conclude that the ALJ's failure to perform a functional analysis is not an error that warrants remand.[78]

Second, plaintiff argues that the ALJ failed to include plaintiff's limitation in combination; in other words, plaintiff contends that the ALJ only considered plaintiff's physical limitations and not his mental impairments. If true, this would require a remand of the case because, similar to the severity determination at step two,[79] the ALJ must consider all medically determinable impairments—both physical and mental—in his RFC determination under 20 C.F.R. § 404.1545(a).[80] However, this is not the case. The ALJ considered plaintiff's mental impairment in formulating the RFC by discussing plaintiff's testimony and the mental health treatment records of the Kendall County Health Department.[81] Those reports were discussed in

---

[75] SSR 96-8P, 1996 WL 374184, at *7.
[76] *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) ("[a]lthough the RFC assessment is a function-by-function assessment, SSR 96–8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient") (internal quotations omitted).
[77] R. at 16-22.
[78] *See Wurst v. Astrue*, 866 F. Supp. 2d 951, 962 (N.D. Ill. 2012) *aff'd sub nom. Wurst v. Colvin*, 520 F. App'x 485 (7th Cir. 2013) ("[c]ontrary to [plaintiff's] assertion, the ALJ did in fact provide a sufficient narrative discussion that addressed the objective medical evidence and [plaintiff's] testimony").
[79] 20 C.F.R. § 404.1523.
[80] *Craft*, 539 F.3d at 676.
[81] R. at 17, 20-21.

the ALJ's RFC determination and showed that plaintiff was making great progress in mental health by, for example, going fishing in Wisconsin with his father, helping his father put on a new roof, showing "fair insight and judgements," and being "motivated for services."[82] Because plaintiff's physical and mental impairments were discussed as a whole by the ALJ, we do not find plaintiff's second argument persuasive.

Third, plaintiff criticizes the ALJ's conclusion that he did not give controlling weight to the treating physicians or provide an analysis of why the opinions of the treating physicians were not controlling.[83] In making this argument, plaintiff points our attention to the reports of two chiropractors. However, as the plaintiff concedes, chiropractors are not an "acceptable medical source" who can offer "medical opinions" for social security determinations.[84] Additionally, contrary to plaintiff's criticism, the ALJ discussed the reports of these chiropractors in his RFC determination.[85] In fact, the Commissioner is correct to point out that the recommendations and conclusions of plaintiff's treating physician, J. George Handley, M.D., were discussed and rejected by the ALJ.[86] Despite this rejection, the treating physician's recommendations and conclusions align with the ALJ's RFC determination—both limit plaintiff to "light work."[87] We, therefore, conclude that the ALJ provided sufficient analysis and discussed why he did not give controlling weight to the treating physicians and chiropractors.[88]

---

[82] R. at 20-21.
[83] *See* 20 C.F.R. § 404.1527(c); *see also Minnick*, 775 F.3d at 938.
[84] 20 C.F.R. § 404.1513(a); *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).
[85] R. at 18-19.
[86] R. at 480 (plaintiff's treating physician Dr. Handley concluded in September 2005 that the "[plaintiff] should be encouraged to look for a job that does not involve lifting anything over 40 pounds"); *see also* R. at 18, 22 (ALJ's discussion and rejection of Dr. Handley's findings).
[87] *Id.*

[88] *See Pierce*, 739 F.3d at 1051 (holding that "[t]he ALJ gave sufficient consideration here by summarizing [the chiropractor's] findings and noting that they were not corroborated by any objective evidence in the record").

### D. ALJ's Credibility Determination Was Proper

Plaintiff also makes the argument that the ALJ improperly rejected the credibility of plaintiff's testimony regarding his symptoms and impairments through a boilerplate statement with no analysis. We do not find this argument persuasive.

Generally, we give special deference to the ALJ's credibility determinations unless it is patently wrong because the ALJ has the opportunity to observe the testimony of the plaintiff.[89] The ALJ, however, must explain his credibility decision in a rational manner by confronting the plaintiff's testimony and discussing why and how he reached his conclusions to the contrary.[90] The use of a "boilerplate statement" in determining plaintiff's credibility without such analysis has been repeatedly criticized by the Seventh Circuit.[91]

Here, we agree with the Commissioner's argument that after the alleged "boilerplate statement," the ALJ discussed and analyzed various medical evidence such as the treating physicians' reports, the chiropractors' reports, and the Kendall County Health Department's reports, which supported his credibility determination.[92] And as the Seventh Circuit requires, the ALJ specifically confronted plaintiff's testimony by stating that he was not persuaded because plaintiff's daily activities such as walking his dog, playing pool, refurbishing a truck, and helping his father put up a new roof belied plaintiff's testimony.[93] The ALJ made a minor mistake in his opinion by discussing these points "below" the "boilerplate statement" despite stating that they

---

[89] *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).
[90] *McKinzey*, 641 F.3d at 890; *see also Prochaska v. Barnhart*, 454 F.3d 731, 737-38 (7th Cir. 2006) (holding that the ALJ provided an adequate credibility analysis by comparing plaintiff's testimony with medical records).
[91] *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).
[92] R. at 18-21.
[93] *See Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir.2005) (holding that the ALJ provided an adequate credibility analysis by discussing the inconsistencies between plaintiff's testimony and medical records).

were "above," but this is a harmless error that does not alter our conclusion.[94] Thus, contrary to plaintiff's contention, we conclude that the ALJ did not merely use a "boilerplate statement" and provided specific reasons in the record to discredit plaintiff's testimony.[95]

### E. ALJ's Step Five Determination Was Proper

Finally, in step five, ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."[96] The ALJ's conclusion relied on the testimony of the VE who concluded that there were a significant number of "light work" jobs available for plaintiff.[97] Plaintiff challenges this conclusion on two grounds: (1) the ALJ's hypothetical question to the VE in soliciting this response was defective, and (2) the VE had no basis to support her testimony regarding the number of jobs available to plaintiff given his limitations.

#### 1. ALJ's Hypothetical Question to the VE Was Sufficient

First, plaintiff argues that the hypothetical question to the VE was defective because the VE did not consider all the medical impairments of plaintiff. In making this argument, plaintiff points out that the hypothetical question to the VE did not reflect his capacity to perform full-time work eight hours a day, and five days a week. We do not agree.

Plaintiff is correct in that the hypothetical question from the ALJ to the VE must include "all limitations supported by medical evidence in the record,"[98] but these limitations are qualified

---

[94] R. at 18; *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("[t]he doctrine of harmless error indeed is applicable to judicial review of administrative decisions").

[95] *Cf. Parker*, 597 F.3d at 922 (remanding a case because, besides a boilerplate statement, the ALJ provided "no clue" as to how the credibility was determined).

[96] R. at 23.

[97] *Id.*

[98] *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).

to what the ALJ finds credible.[99] In this case, the ALJ's hypothetical question to the VE included the physical limitations of plaintiff, which the ALJ found credible. More specifically, the ALJ asked the VE the number of jobs plaintiff can perform assuming the limitations of "lifting up to 20 pounds occasionally, 10 pounds frequently with the ability to be on the feet or seated six out of eight hours" and not climbing ladders, ropes or scaffolds—all of which relate to plaintiff's physical limitations.[100]

By asserting that the VE failed to assess plaintiff's capacity to perform full-time work eight hours a day, and five days a week, plaintiff seems to be inferring that the ALJ failed to assess plaintiff's "concentration, persistence, or pace," or mental impairments. In either case, we conclude that the ALJ's hypothetical question was sufficient. In terms of the limitations of "concentration, persistence, or pace," the ALJ found plaintiff to have only a mild limitation in this area,[101] and later discredited plaintiff's testimony and medical evidence by concluding that he is capable of some "lifting, bending and concentration."[102] Consistent with this finding, the ALJ properly limited the scope of his questions to jobs that require "light work."[103] In terms of plaintiff's mental impairments, the ALJ concluded that plaintiff was in remission from his substance abuse, presented normal mental status exams, and has been successfully maintained on medications without adverse effects.[104] Because the ALJ concluded that plaintiff's mental

---

[99] *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (holding that the ALJ was not required to include certain limitations of plaintiff in her hypotheticals because she was "justified in discounting [a medical expert's] conclusions and [plaintiff's] credibility").
[100] R. at 62.
[101] R. at 15
[102] R. at 22.

[103] *See Sims v. Barnhart*, 309 F.3d 424, 431-32 (7th Cir. 2002) (concluding that the ALJ properly limited the scope of his hypothetical question to the VE by excluding "heavy lifting and strenuous activity").
[104] R. at 21.

impairments were not credible, we find no error in his omission of these mental impairments in the hypothetical question to the VE.[105]

Even if the ALJ's hypothetical question to the VE was defective, the Commissioner rightfully points out that the hypothetical question cannot be challenged because plaintiff's counsel failed to cross-examine the VE during the hearing. As the Seventh Circuit noted in *Ragsdale v. Shalala*,[106] if the plaintiff's counsel had the opportunity to cross-examine and refute the scope of the VE's conclusion during the hearing and did not do so, the plaintiff is barred from arguing the scope of the VE's conclusion because he failed to protect his own interest.[107] We conclude that the *Ragsdale* rule applies to this case because plaintiff's counsel did not explicitly object to the scope of the hypothetical question or ask a modified hypothetical question.[108] Rather, plaintiff's counsel merely confirmed that the VE did not receive the medical records and only responded to the ALJ's hypothetical (not what she had learned during the hearing).[109] By not raising his objections to the hypothetical question during the hearing or posing his own hypothetical questions, plaintiff's counsel simply missed his opportunity to question the VE's thought process.[110]

---

[105] *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("[w]e reject [plaintiff's] contention that the ALJ should have included additional mental and physical limitations in his questioning of the vocational expert, because the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.").
[106] 53 F.3d 816, 819 (7th Cir. 1995).
[107] *Id.*; *see also Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.) *on reh'g*, 368 F.3d 691 (7th Cir. 2004) ("[plaintiff's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited").
[108] *See Barrett*, 355 F.3d at 1067; *see also Mont v. Chater,* 114 F.3d 1191 (7th Cir. 1997) (holding against the plaintiff because plaintiff's attorney "moved on to the next line of questioning" in cross-examination rather than challenging the VE's scope and reasoning).
[109] R. at 63-64.
[110] *See Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) ("[r]aising a discrepancy only after the hearing, as [plaintiff's] lawyer did, is too late. An ALJ is not obliged to reopen the record. On the record as it stands—that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning—the ALJ was entitled to reach the conclusion she did").

Plaintiff attempts to differentiate this case from *Ragsdale* by arguing that the VE in this case, unlike the VE in *Ragsdale*, did not review plaintiff's medical records. But we do not find this argument convincing. The purpose of the *Ragsdale* cross-examination requirement is to ensure that the VE's thought process is brought out during the hearing.[111] It is not to require the VE to conduct a complete review of plaintiff's medical records.

### 2. VE's Testimony Regarding the Number of Available Jobs Was Justified

Second, plaintiff contends that the VE had no scientific or mathematical basis to support the number of jobs available to plaintiff given his limitations, and argues that her testimony regarding the number of jobs available was merely a guess. This issue was properly raised in cross-examination by plaintiff's counsel.[112]

The VE testified that there are roughly 24,600 jobs[113] in the "light unskilled category" such as a cafeteria attendant, a housekeeping cleaner, and a marker that would accommodate plaintiff's limitations.[114] The VE stated that this number came from the United States Department of Labor, Bureau of Labor Statistics ("BLS"), and the Dictionary of Occupational Titles ("DOT"), and further explained her methodology in arriving at these figures.[115] The VE's sources are proper government sources of which "the ALJ was required to take administrative notice," and plaintiff does not dispute this point.[116]

---

[111] *Ragsdale*, 53 F.3d at 819 ("[t]here currently exist sufficient procedural measures to bring out the vocational expert's thought process. For example, the claimant could question the vocational expert on cross-examination, pose his own hypothetical questions, or request the ALJ to pose interrogatories to the vocational expert").
[112] R. at 67.
[113] The Seventh Circuit has held that "when a person can perform 1,000 or more jobs, then work exists in 'significant' numbers." *Stanley v. Astrue*, 410 F. App'x 974, 976 (7th Cir. 2011).
[114] R. at 62-63.
[115] R. at 64-67.
[116] *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (citing 20 C.F.R. § 404.1566(d)).

What plaintiff disputes, however, is the VE's refusal to reduce this number of jobs to accommodate plaintiff's additional limitations such as not being able to climb ladders. We do not find this argument persuasive because the VE clearly explained to plaintiff's counsel that the DOT already accommodates such limitations.[117] The VE explained that, for example, climbing, balancing, or other postural limitations are not necessary to perform the job of a marker in the DOT.[118] Furthermore, when plaintiff's counsel's questioned the VE on the difference between the BLS and DOT figures, the VE reconciled and explained the difference.[119] These well-founded responses are in sharp contrast to *McKinnie v. Barnhart*[120] which plaintiff cites and relies on. In *McKinnie*, the Seventh Circuit held that the ALJ's reliance on the VE was unreasonable because the VE could not substantial her findings and provided vague responses to the plaintiff's counsel's questioning.[121] Although the VE did not have supporting documents to provide plaintiff's counsel upon his demand,[122] what the VE is required to provide are "underlying data and reasoning," not documents.[123] The VE in this case used proper governmental data and clearly explained her reasoning. We, thus, conclude that the VE's testimony regarding the number of available jobs for plaintiff was substantially supported.

---

[117] R. at 66.
[118] *Id.*
[119] R. at 66-67.
[120] 368 F.3d 907 (7th Cir. 2004).
[121] *Id.* at 911.
[122] R. at 67.
[123] *Donahue*, 279 F.3d at 446 ("an expert is free to give a bottom line, provided that the underlying data and reasoning are available on demand").

### V. Conclusion

For the reasons outlined, we affirm the decision of ALJ. Plaintiff Patrick P. Ronning's motion for summary judgment is denied [dkt. 22] and the Commissioner's motion for summary judgment is granted [dkt. 27].

**IT IS SO ORDERED.**

**DATED:** April   27  , 2015

_____
Susan E. Cox
United States Magistrate Judge